# LAW OFFICE OF PETER GOLDBERGER

50 Rittenhouse Place
Ardmore, PA  19003-2276

*Of Counsel:*                               (610) 649-8200                          Peter Goldberger*
Anna M. Durbin*                          FAX  (610) 649-8362                      Pamela A. Wilk
James H. Feldman, Jr.[b‡]            E-mail  peter.goldberger@verizon.net
[*]Also admitted in Connecticut
[b‡]Also admitted in Ohio

October 26, 2008

Hon. Ronald L. Buckwalter
Senior U.S. District Judge
14614 U.S. Courthouse
601 Market Street
Philadelphia, PA  19106

                        Re:  United States v. Fumo
                               No. 06-CR-319-03

Dear Judge Buckwalter:

Ordinarily, the defense would not address ourselves to the Court in this form, but the prosecutors' letter of October 24, 2008, is so extraordinary and irregular as to defy any other response.  The defense has attempted and continues to attempt to try this case in the courtroom.  If we have a motion to file, we file it as a motion.  If we have an objection to lodge, we lodge it in the courtroom, at the appropriate time, as an objection.  We try to show respect for the experience and professionalism of the prosecutors, and we do not presume to tell them how to perform their legitimate function within the system.  We now ask that the Court advise or admonish the government that the prosecution should approach this case in the same way.

It is hard to imagine a circumstance under which it would be appropriate for counsel for either side to write the Court a letter "to advise the Court regarding [a party's] views on issues which, [that party supposes], will be the subject of [trial] objections in the coming days."  As stated in this Court's published statement of Pretrial and Trial Procedures:

> "Contacting the court by letter ... during the pendency of litigation is normally not appropriate ...." (¶5)  "[I]f counsel must contact the court, such contact should be made only after consulting with opposing counsel.  If opposing counsel objects to the proposed contact with the court, then counsel should file a motion." (¶6)  "[T]he court intends to avoid side bar conferences.  Under most circumstances this is accomplished by virtue of counsel having anticipated the legal issues and objections and raised them ... at a recess or after adjournment." (¶11)

Even if there were some urgent need to disregard the Court's guidelines by writing, however, it would not entail <u>filing</u> the letter on the public, electronic docket.  Defense counsel can imagine only one purpose for the government's doing so in this instance:  to continue the pattern seen in this case -- ever since the filing of the 264-page indictment -- of overwritten, rhetorically embellished papers transparently designed for quotation in the press rather than to comply with the rules of practice and procedure.  During a lengthy trial of a high-profile case, the temptation that jurors face to violate the Court's instructions to avoid all press

coverage must be enormous. When a matter is raised at recess, even when the press is present, both sides have an opportunity to be heard at the same time, and the Court has an opportunity to respond and (if appropriate) to rule. When the government files a "letter" on the ECF docket, on the other hand, its position is presented to the press in isolation, and in terms of its own choosing, no matter how one-sided, exaggerated, or distorted. The risk of unfairly prejudicial publicity then coming to a juror's attention is greatly and unnecessarily magnified.

1. Particularly baffling is the prosecutors' contention that defense counsel made an improper opening to the jury, in violation of the Court's October 8, 2008, pretrial ruling. As the government notes, the Court overruled the prosecutor's objection; obviously, the defense understanding of the pretrial ruling was more accurate than the government's. Similarly, the use of a concrete and realistic hypothetical question is totally appropriate in questioning a witness whose opinion based on experience is being presented by the other side. (Moreover, the use of a gun control measure as an example of the intimate interaction of legislation with "politics," and the fallacy of trying categorically to separate the two in a system of popular, electoral democracy, is particularly appropriate and informative. The accuracy and fairness of the hypothetical cannot seriously be questioned, in light of the credit to which Senator Fumo is entitled as principal architect of Pennsylvania's 1995 adoption of a particularly strong version of the Uniform Firearms Act (in a form endorsed by both Handgun Control, Inc. (led by Sara Brady), and the NRA), and the praise he received just this month from the state District Attorney's Association, signed by Philadelphia DA Lynne Abraham, for his role in shepherding passage of the straw purchaser bill, H.B. 1845. Naturally, the Philadelphia press will sometimes be disappointed with the compromises necessary to pass legislation through the General Assembly of a state as diverse as Pennsylvania. Without Senator Fumo's political efforts, however, it is doubtful that any such laws would have passed.)

The prosecutors' assertion that it is "clear what is relevant in this case and what is not" is frankly absurd. This may be "clear" to the prosecutors in their own minds (anything incriminating, is apparently what they mean), but the defense believes that the subject of what is admissible at trial should be determined by reference to the rules of evidence and should be decided in the concrete context of timely objections to particular questions or testimony. The filing of "letters to the Court" is not the way. Evidence which raises reasonable doubts about the charges in this case is particularly relevant, in our view, and the defense intends to continue presenting it, as allowed and protected by the Sixth Amendment and the Federal Rules of Evidence.

2. Counts One through 64 of this indictment cast the state Senate of Pennsylvania as the victim of a fraud scheme devised and designed by Senator Fumo and executed by use of the mails, wires and other interstate facilities. The government sought to present to the jury the testimony of Russell Faber, secretary of the Senate, as if it expressed or represented the perspective of the putative victim in this matter. But the Senate does not express its views through its Secretary but rather through its official acts, including its Resolutions.

What the prosecutors refer to now as "a purported resolution of the Senate," is an official statement by the government's denominated "victim" in this case, S.Res. 365 (adopted unanimously on July 4, 2008) (a copy of which has been marked as Defense Exhibit 717-7, and which is judicially noticeable in any event). Prior to voting, the Senators had every opportunity to study and consider the federal government's assertions about their colleague as detailed (in disregard of Fed.R.Crim.P. 7(c)(1)'s requirement that the charging instrument be "concise") in the indictment. The victim has a right to be heard and to be treated with dignity and fairness in a criminal case, 18 U.S.C. § 3771. While the Crime Victims Act purports to deny the defendant standing to assert the victim's rights, id.(d)(1), the government is obligated to do so, id.(c)(1). The official and formal views of the "victim" named

in Counts One through 64, that Senator Fumo's official conduct has been "honorable" and "true to his word," is not hearsay, Fed.R.Evid. 201(b)(2), 803(8); is not character testimony; and is anything but "irrelevant."

3. While the undersigned does not speak for defendant Arnao, counsel for defendant Fumo have a profound interest in the fairness of the rules which will govern this trial and in the scope and manner in which the government's witnesses may be cross-examined. Any suggestion that counsel for both defendants may not cross-examine a witness whose testimony has not been subject to a limiting instruction, see Fed.R.Evid. 105, is baseless. Nor is the government in any position to second-guess what lines of cross-examination, within the rules, should be deemed helpful to his client by any particular defense attorney. The Sixth Amendment will not tolerate any attempt by the government to control the extent to which or the manner in which counsel for the defendants may choose to conduct the defense, including any efforts to cooperate with one another for their clients' mutual advantage.

        Respectfully,

        PETER GOLDBERGER
        <u>Co-Counsel for Defendant Fumo</u>

cc:   John J. Pease, Esq., &
      Robert A. Zauzmer, Esq.
        Assistant U.S. Attorneys

     Edwin J. Jacobs, Esq.